# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

SKYE MINERAL INVESTORS, LLC and
CLARITY COPPER, LLC, directly and
derivatively on behalf of SKYE MINERAL
PARTNERS, LLC,

        Plaintiffs,

        v.

DXS CAPITAL (U.S.) LIMITED, PACNET
CAPITAL (U.S.) LIMITED, MARSHALL
COOPER, SANJIV NORONHA, WATERLOO
STREET LIMITED, LIPPO CHINA
RESOURCES LTD., MICHAEL RIADY,
STEPHEN RIADY,

        Defendants,

SKYE MINERAL PARTNERS, LLC,

        Nominal Defendant.

DXS CAPITAL (U.S.) LIMITED, PACNET
CAPITAL (U.S.) LIMITED, and WATERLOO
STREET LIMITED, directly and derivatively on
behalf of SKYE MINERAL PARTNERS, LLC,

        Counterclaim Plaintiffs,

        v.

SKYE MINERAL INVESTORS, LLC and
CLARITY COPPER, LLC,

        Counterclaim Defendants,

SKYE MINERAL PARTNERS, LLC,

        Nominal Defendant.

C.A. No. 2018-0059-JRS

DXS CAPITAL (U.S.) LIMITED, PACNET ) 
CAPITAL (U.S.) LIMITED, and WATERLOO )
STREET LIMITED, directly and derivatively on )
behalf of SKYE MINERAL PARTNERS, LLC, )
)
               Third-Party Plaintiffs, )
)
    v. )
)
DAVID J. RICHARDS and CLINTON W. )
WALKER, )
)
               Third-Party Defendants, )
)
SKYE MINERAL PARTNERS, LLC, )
)
               Nominal Defendant. )

## MEMORANDUM OPINION

Date Submitted: April 13, 2021
Date Decided: July 15, 2021

Rudolf Koch, Esquire, Kevin M. Gallagher, Esquire and Daniel Kaprow, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware and Jason Cyrulnik, Esquire, Edward Normand, Esquire and Paul Fattaruso, Esquire of Cyrulnik Fattaruso LLP, New York, New York, Attorneys for Plaintiffs, Counterclaim-Defendants and Third-Party Defendants.

Thomas W. Briggs, Jr., Esquire and Miranda N. Gilbert, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware and Pedro A. Jimenez, Esquire, Kevin C. Logue, Esquire, Kevin P. Broughel, Esquire, Nicholas Bassett, Esquire, Katherine K. Solomon, Esquire, Katherine Rookard, Esquire of Paul Hastings LLP, New York, New York, Attorneys for Counterclaim-Plaintiffs and Third-Party Plaintiffs.

**SLIGHTS, Vice Chancellor**

Defendants, Sanjiv Noronha and Dr. Stephen Riady, have moved to dismiss the Second Amended Verified Complaint (the "Complaint") filed by Plaintiffs, Skye Mineral Investors, LLC ("SMI") and Clarity Copper, LLC ("CC" and, together, "Plaintiffs"), on the ground that service of process has not been properly effected under Delaware's long-arm statute, 10 *Del. C.* § 3104 ("Section 3104"). For reasons explained below, I disagree and, therefore, deny the motion to dismiss.

## I. BACKGROUND

In resolving the motion under Chancery Rules 12(b)(1), (4) & (5), I may "look to matters outside the complaint to determine whether [the court] has jurisdiction."[1] In this case, the facts relating to service are largely undisputed.[2]

### A. Parties

Skye Mineral Partners ("SMP") is a Delaware limited liability company.[3] Virtually all of SMP's assets consist of its ownership interest in CS Mining, LLC

---

[1] 61A Am. Jur.2d *Pleading*, § 463 (July 2021 Update).

[2] The facts surrounding the underlying dispute are recounted fully in *Skye Mineral Investors, LLC v. DXS Capital (U.S.) Ltd.*, 2020 WL 881544 (Del. Ch. Feb. 24, 2020).

[3] D.I. 52 (Second Am. Verified Compl.) ("Compl.") Ex. 1, Recital D.

1

("CSM").[4]  At all relevant times, SMP owned more than 99% of CSM and was its managing member.[5]

SMP's Board of Managers (the "Board") comprised three members, each appointed by SMP's members.[6]  Plaintiffs, SMI and CC, appointed two Board members while Defendants, DXS Capital (U.S.) Limited ("DXS") and PacNet Capital (U.S.) Limited ("PacNet"), appointed the third member, Defendant, Marshall Cooper.[7]

Defendant, Sanjiv Noronha, is an individual residing in Singapore.[8]  Plaintiffs allege Noronha is "affiliated" with Defendant, Lippo China Resources Ltd. ("LCR"), and that he "represented" Defendant, Waterloo Street Limited ("Waterloo"), in various matters relating to Plaintiffs' claims.[9]

---

[4] Compl. ¶ 33.

[5] Compl. ¶ 34.

[6] Compl. ¶ 23.

[7] Compl. ¶¶ 23, 27, 37.

[8] Compl. ¶ 28.

[9] Compl. ¶¶ 28, 123.

Defendant, Stephen Riady, is an individual residing in Singapore.[10] He is the Executive Chairman of LCR.[11]

## B. Procedural History

On January 24, 2018, Plaintiffs filed their original complaint alleging that SMP's minority members orchestrated a scheme wrongfully to divest SMP of its lone asset, CSM.[12] After the case was removed from, and then remanded back to, this Court, Plaintiffs filed an amended complaint on January 14, 2019.[13] Plaintiffs filed the now operative Complaint on April 22, 2019.[14]

On May 22, 2019, Defendants moved to dismiss the Complaint on several grounds including, as against Noronha and Riady, that the Complaint had not been properly served because (i) Delaware law requires service of process in Singapore to be effected in accordance with Singaporean law and (ii) Plaintiffs have failed to serve Noronha and Riady at all, much less in compliance with Singapore law.[15] In support of their motion, Defendants submitted an affidavit of a Singaporean

---

[10] Compl. ¶ 30.

[11] *Id.*

[12] D.I. 1.

[13] D.I. 18.

[14] D.I. 52.

[15] D.I. 60 (Defs.' Opening Br. in Supp. of Mot. to Dismiss the Verified Second Am. Compl.) at 10–13.

advocate and solicitor, Blossom Hing, who opined that, "unless otherwise agreed between the relevant parties or ordered by [a Singapore court], service of originating process on an individual under Singapore law must be by personal service."[16]

After attempting unsuccessfully to serve their Complaint upon both Riady and Noronha several times in Singapore via a solicitor or solicitor's clerk consistent with Singapore law, and before answering Defendants' motion to dismiss, Plaintiffs filed motions with this Court seeking approval of an alternative form of service on Noronha and Riady, namely by (i) email and (ii) posting on the front doors of their residences (together, the "Substituted Means").[17] In support of their motion, Plaintiffs invoked Delaware's long-arm statute, Section 3104, which permits service: (i) "[i]n the manner provided or prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction," or (ii) "as directed by the court."[18] In response to the motion for

---

[16] D.I. 22 (Hing Aff., Feb. 4, 2019) ("Opening Hing Aff.") ¶ 7.

[17] D.I. 55 ¶¶ 3–8 (Pls.' Mot. for Alternative Mode of Service on Riady) (describing several unsuccessful attempts to serve Riady at two separate addresses over the course of nearly one month, consistent with Singaporean law); D.I. 65 ¶¶ 3, 7 (Pls.' Mot. for Alternative Mode of Service on Noronha) (describing several unsuccessful attempts to serve Noronha at his residence, consistent with Singaporean law). I note there is no dispute that Singapore is not a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). D.I. 55 ¶ 4; D.I. 65 ¶ 4.

[18] *See* D.I. 55 ¶ 3 (quoting 10 *Del. C.* §§ 3104(d)(2) & (d)(4)); D.I. 65 ¶ 3.

4

alternative service, Defendants submitted a letter "reserv[ing] all rights and defenses as to the adequacy of [the Substituted Means] of service and all other defenses, including lack of personal jurisdiction."[19]

On May 23, 2019 and July 2, 2019, this Court issued orders granting the motions for alternative service on Riady and Noronha, respectively.[20] Plaintiffs then attempted to effect service on Noronha and Riady in Singapore via the Substituted Means. In doing so, Plaintiffs did not involve, much less seek approval from, the Singaporean courts.

On July 8, 2019, Plaintiffs opposed Defendants' motion to dismiss, arguing with respect to service of process that the Substituted Means constituted sufficient service under Section 3104.[21] In support of that position, Plaintiffs submitted an affidavit from an advocate and solicitor in Singapore, Ng Lip Chih, who opined that the Substituted Means were effective under Singapore law.[22] On August 7, 2019, Defendants filed a reply brief, attaching a further affidavit from Hing (i) reiterating the proper means for serving process under Singapore law and (ii) explaining that,

---

[19] D.I. 58 (T. Briggs Letter) at 1–2.

[20] D.I. 61; D.I. 68.

[21] D.I. 77 (Pl.'s Corrected Answering Br. in Opp'n to Defs.' Mots. to Dismiss) at 15–24.

[22] D.I. 76 (Ng Aff., dated July 8, 2019) ¶ 6.

contrary to Ng's assertions, one cannot serve foreign process in Singapore by substituted means pursuant to an order of a foreign court.[23]

On February 24, 2020, the Court issued an order on the motion to dismiss, granting it in part and denying it in part.[24] On the issue of service of process and related jurisdictional defenses, the Court held that the issue of inadequate service of process had not been "properly joined for decision" and, therefore, "reserve[d] judgment on Lippo's Rule 12(b)(4) and (5) Motions until the record on foreign law is further developed."[25]

On May 19, 2020, the parties exchanged supplemental affidavits on Singapore law.[26] Defendants submitted another affidavit from Ms. Hing, while Plaintiffs chose a new witness, Shourav Lahiri.[27] The experts were deposed in October and

---

[23] *See generally* D.I. 83 (Hing Aff., Aug. 7, 2019) ("Hing Reply Aff.").

[24] *Skye Mineral*, 2020 WL 881544, at *1–2, *36.

[25] *Id.* at *8 (citing *Germaninvestments AG v. Allomet Corp.*, 225 A.3d 316 (Del. 2020) (reversing trial court for failing to develop an adequate record of foreign law before applying that law to decide a motion to dismiss under Rule 12(b)(3))).

[26] D.I. 125–26.

[27] *See id.*

November 2020.[28]  The parties completed briefing on March 26, 2021;[29] the motion

was argued on April 13, 2021, and submitted for decision that day.[30]

## II.  ANALYSIS

Under Chancery Rule 12(b)(5), a defendant may move for dismissal of a

complaint when the plaintiff has failed sufficiently to serve process.[31]  Rule 12(b)(5)

rests on the premise that "[p]ersonal jurisdiction must be effected through proper

service of process, and actual notice by a defendant [without service of process] does

not satisfy this constitutional requirement."[32]  Thus, "where a plaintiff has failed to

obtain personal jurisdiction over each of the defendants through proper service of

process, the case must be dismissed" under Chancery Rules 12(b)(2) & (5).[33]  The

---

[28] D.I. 170.

[29] D.I. 174 (Supplemental Br. of Defs.' Noronha and Riady in Supp. of Mot. to Dismiss Second Am. Compl. For Insufficient Service of Process and Lack of Personal Jurisdiction) ("Defs.' Supplemental Opening Br."); D.I. 184 (Pls.' Supplemental Br. in Opp'n to Mot. of Defs.' Noronha and Riady to Dismiss Second Am. Compl. for Insufficient Service of Process and Lack of Personal Jurisdiction) ("Pls.' Supplemental Answering Br."); D.I. 192 (Reply Br. of Defs.' Noronha and Riady in Supp. of Mot. to Dismiss Second Am. Compl. for Insufficient Service of Process and Lack of Personal Jurisdiction) ("Defs.' Supplemental Reply Br.").

[30] D.I. 195 ("Oral Arg. Tr.").

[31] Del. Ch. Ct. R. 12(b)(5).

[32] *Sharr v. Mun. City of Newark, Del.*, 2004 WL 332508, at *1 (D. Del. Jan. 28, 2004).

[33] *Id.* at *2.

plaintiff bears the burden of demonstrating that service of process was properly effected on each defendant.[34]

As noted, Plaintiffs argue service of process upon Noronha and Riady was effective under two separate provisions of Section 3104. First, Plaintiffs argue service was effective under Section 3104(d)(4), which allows foreign service in any manner "directed by a court," as long as it is "reasonably calculated to give actual notice" to the defendant so served.[35] Plaintiffs argue separately that service was valid under Section 3104(d)(2), which allows service "[i]n the manner provided or prescribed by the law of the place in which the service is made,"[36] because Singapore law allows service in any court-authorized manner that provides actual notice. Before addressing the merits of these positions, however, I address the parties' competing arguments that the other has waived the right to prosecute or defend this motion to dismiss.

## A. No Waiver

Defendants assert Plaintiffs waived their argument under Section 3104(d)(4) because they did not perfect that argument in their July 2019 brief in opposition to

---

[34] *Boulden v. Albiorix, Inc.*, 2013 WL 396254, at *9 (Del. Ch. Jan. 31, 2013), *as revised* (Feb. 7, 2013).

[35] 10 *Del. C.* § 3104(d)(4).

[36] *Id.* § 3104(d)(2).

Defendants' motion to dismiss; Plaintiffs argue Defendants waived any argument as to whether service was effective because Defendants did not oppose the initial motion for alternative service. I disagree on both fronts.

"The standard for finding waiver in Delaware is quite exacting."[37] "Waiver is the voluntary and intentional relinquishment of a known right. It implies knowledge of all material facts and intent to waive. The facts relied upon for proof must be unequivocal in character."[38]

Plaintiffs' motion for alternative service sought an order from the Court approving two traditionally accepted means of substituted service. Section 3104(d)(4) empowers the court to authorize a means of service on motion or otherwise; the statute does not require the plaintiff specifically to invoke Section 3104(d)(4) as a predicate to the court directing service by a particular means under that section.[39] Because Plaintiffs properly sought alternative service by court order, they cannot be said to have intentionally relinquished their right to effect

---

[37] *Am. Family Mortg. Corp. v. Acierno*, 649 A.2d 655 (Del. 1994) (TABLE).

[38] *Realty Growth Invs. v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982) (internal citations omitted).

[39] *See* 10 *Del. C.* § 3104(d).

service under Section 3104(d)(4) (which expressly contemplates service "[a]s directed by a court").[40]

Nor did Noronha and Riady, under these circumstances, waive their right to oppose Plaintiffs' motion for alternative service by expressly reserving "all rights and defenses as to the adequacy of [the requested Substituted Means of] service and all other defenses, including lack of personal jurisdiction."[41] When the motion for alternative service was filed, the record on the state of Singaporean law as relates to foreign service of process was inchoate.[42] Accordingly, the Court reserved judgment on that question "until the record on foreign law is further developed."[43] The Court then instructed the parties to "confer and submit a scheduling order that lays out a plan for further development of the record concerning Singapore law and then for submission of the Motions for adjudication."[44] Because the means by which service could properly be effected was unclear at the time of submission of the motion for alternative service, Noronha and Riady did not know "all material facts"

---

[40] *See id.* § 3104(d)(4).

[41] D.I. 58 at 1–2.

[42] *See Skye Mineral*, 2020 WL 881544, at *8 (citing *Germaninvestments*, 225 A.3d 316).

[43] *Id.* at *8.

[44] D.I. 101, at 2.

relating to the motion and so cannot be said to have waived their right to contest service of process at that time.[45]

## B. Plaintiffs Effectively Served Process Under Section 3104(d)(4)

As noted, Plaintiffs claim to have properly effected service of process under Sections 3104(d)(2) and 3104(d)(4) of Delaware's long-arm statute. Because I find service was properly effected under Section 3104(d)(4), I need not analyze whether service was effective under Section 3104(d)(2).

To begin, Section 3104 provides in relevant part:

(d) When the law of this State authorizes service of process outside the State, the service, when reasonably calculated to give actual notice, may be made:

---

[45] I acknowledge the manner in which the motions for alternative service and this motion to dismiss were teed up for decision was not a model of efficiency. As noted, when Plaintiffs filed their motions to approve an alternative means of service, Defendants elected to reserve their rights rather than engage on the motions at that time. This delayed engagement, in part, has prompted the competing claims of waiver. Even so, for reasons stated, I have rejected both calls to decide the instant motion on grounds of waiver. Having done so, in hopes of avoiding similar confusion in future cases, I offer my two cents on the most efficient means by which to resolve the propriety of alternative means of service under Section 3104(d)(4). The party seeking to serve by alternative means should make a motion for court approval of alternative service under Chancery Rule 4(d)(7). The defendants who oppose that relief should oppose the Rule 4(d)(7) motion on the merits. And the court should then adjudicate whether the plaintiff has presented a "special case" for alternative service by the means requested by the plaintiff on the Rule 4(d)(7) motion. If needed to decide that motion, the court may order further development of the evidentiary record. Once the court determines that "an additional mode of service," as contemplated by Rule 4(d)(7), is appropriate, the only motion a defendant may make thereafter is a motion under Rule 12(b)(5) challenging whether service, in fact, was effected in accordance with the court's Rule 4(d)(7) order. The fact that sequence did not play out here (largely because the Court did not direct it) is unfortunate, but that is no basis for the Court to decline to decide the matter on the merits.

11

(1) By personal delivery in the manner prescribed for service within this State.

(2) In the manner provided or prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction.

(3) By any form of mail addressed to the person to be served and requiring a signed receipt.

(4) As directed by a court.[46]

"The current version of 10 *Del. C.* § 3104 was enacted by the General Assembly effective October 7, 2008. The new statute revised Delaware's prior long-arm statute and was designed to place Delaware's long-arm statute in accord with the long-arm statutes adopted by other states."[47] As explained in the statute's synopsis:

This Act simplifies the process to serve a nonresident for acts contained in this Section and will bring current Delaware's now cumbersome method of exercising jurisdiction into conformity with current practice. This will reduce the cost of service and improve judicial efficiency and reduce the time necessary to make service upon nonresidents. Delaware's current technical statute causes various motions to be filed in Court which have nothing to do with the underlying case, wasting judicial resources and increasing litigation costs. This Act is patterned after the Uniform Interstate and International Procedure Act, and has been enacted in substantially the same form in several states, including Pennsylvania, for over 25 years. 42 Pa.C.S. §§ 5322 & 5323. Therefore, there is already a body of case law implementing the proposed updating of the manner of service.[48]

---

[46] 10 *Del. C.* § 3104(d) (formatting added).

[47] *Maldonado v. Matthews*, 2010 WL 663723, at *3 (Del. Ch. Feb. 23, 2010) (citing synopsis of 10 *Del. C.* § 3104).

[48] *Id.*

12

Thus, while "due process requires [a party] to provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,"[49] the legislature intended Section 3104 "to create a less 'cumbersome' method to serve out-of-state residents."[50]

"Although the statute provides a framework that parties can use when attempting service, it does not provide guidance for every possible situation, and the General Assembly appropriately gave [our trial courts] discretion to determine whether service was proper."[51] Consistent with that intent:

> The Delaware Supreme Court has made clear that trial courts must give a broad reading to the terms of the long-arm statute, in order to effectuate the statute's intent to ensure that this state's court may exercise jurisdiction to the full limits permissible under the Due Process Clause. In other words, the Supreme Court has instructed that trial courts should permit service under § 3104 if the statutory language plausibly permits service, and rely upon a Due Process analysis to screen out uses of the statute that sweep too broadly.[52]

---

[49] *Jones v. Flowers*, 547 U.S. 220, 221 (2006).

[50] *Maldonado*, 2010 WL 663723, at *3.

[51] *Id.* at *4.

[52] *Sample v. Morgan*, 935 A.2d 1046, 1056 (Del. Ch. 2007) (citing *Hercules Inc. v. Leu Trust and Banking (Bahamas) Ltd.*, 611 A.2d 476, 480–81 (Del. 1992) ("[Section] 3104(c) is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." (internal citations omitted))); *see also Chandler v. Ciccoricco*, 2003 WL 21040185, at *10–11 (Del. Ch. May 5, 2003) ("Under [the *Hercules*] mandate, my task should be to give the words of the statute a liberal construction and to conclude that [a filing in Delaware] is a transaction of business if that can be reasonably done. Any

With that instruction in mind, I turn to analyze whether Plaintiffs effectively served Noronha and Riady under Section 3104(d)(4). At the threshold, I must determine whether Section 3104(d)(4) provides an independent means, separate from the other provisions of Section 3104(d), to effectuate service of process. I believe it does.

As noted, Section 3104(d)(4) allows foreign service in any manner "directed by a court," provided that it is "reasonably calculated to give actual notice" to the defendant so served.[53] Under Chancery Rule 4(d)(7), the court is empowered with "broad authority" and "broad discretion" to enter an "order directing another or an additional mode of service of a summons in a special case."[54] Though neither party could identify Delaware authority addressing Section 3104(d)(4)'s status as a standalone basis to effect process, courts nationwide have sanctioned service of process under analogous procedural circumstances.

For example, Federal Rule 4(f)(3) allows international service, if reasonably calculated to reach the defendant, "by other means not prohibited by international

---

problems of overbreadth by such a liberal construction can be policed by application of the minimum contacts analysis under the due process clause of the Fourteenth Amendment.").

[53] 10 *Del. C.* § 3104.

[54] *Tratado de Libre Commercio, LLC v. Splitcast Tech., LLC*, 2019 WL 1057976, at *1 n.2, *2 (Del. Ch. Mar. 6, 2019); *In re Krafft-Murphy Co., Inc.*, 2011 WL 5420808, at *3 (Del. Ch. Nov. 9, 2011).

14

agreement, as the court orders."[55] Because the language of Section 3104(d)(4) tracks closely with Federal Rule 4(f)(3), caselaw interpreting the federal rule "provides persuasive guidance."[56] In *Rio Properties, Inc. v. Rio International Interlink*, the Ninth Circuit affirmed a trial court order directing email service under this provision, holding that the rule "unshackles the federal courts from anachronistic methods of service and permits them entry into the technological renaissance."[57] In so holding, the Ninth Circuit interpreted Federal Rule 4(f)(3) by its plain language to allow service to be effected where (1) it was directed by a court and (2) it was "not prohibited by international agreement."[58] Because "[n]o other limitations are

---

[55] Fed. R. Civ. P. 4(f)(3).

[56] *Crumplar v. Superior Court ex rel. New Castle Cty.*, 56 A.3d 1000, 1007 (Del. 2012); *see also Apartment Cmtys. Corp. v. Martinelli*, 859 A.2d 67, 70–71 (Del. 2004) ("[T]he construction of the Superior Court Civil Rules are greatly influenced by the federal judiciary's construction of the Federal Rules of Civil Procedure . . . ."); 4B Charles Alan Wright et al., *Federal Practice and Procedure* § 1134 (4th ed.) ("Finally, Rule 4(f)(3) provides that service in a foreign country can be made as directed by order of the federal court. 35 This provision preserves the content of former Rule 4(i)(1)(E). This type of residual catch-all provision is by no means unusual and appears in a number of federal statutes. Service pursuant to court order rounds out the flexibility that former Rule 4(i) was intended to provide and Rule 4(f) continues to provide. This aspect of both rules permits service in a particular case to be tailored to the necessities of the situation when none of the other methods of service expressly provided for in the rule is satisfactory or likely to be successful." (internal citations omitted)).

[57] *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002). I note that these goals mirror those stated in Section 3104's statutory synopsis.

[58] *Id.* at 1014.

15

evident from the text," the Ninth Circuit held Federal Rule 4(f)(3) provided for an independent means of service.[59]

Like Federal Rule 4(f)(3), nothing in Section 3104(d)(4), or the corresponding Chancery Rule 4(d)(7), suggests a court's order, entered on a well-supported motion by the plaintiff, cannot work as a standalone basis to prescribe a means for effective service of process. Indeed, Defendants do not argue that each of Section 3104(d)'s provisions must be read conjunctively, and there is no textual basis to suggest the General Assembly intended them to be so read. Rather, consistent with the General Assembly's intent to "g[i]ve the Court discretion to determine whether service was proper,"[60] Section 3104(d) enumerates several distinct methods by which service can be properly effected, including "as directed by a court."[61]

Under Section 3104(d)(2), a party may—without a court order—effect service on another party in accordance with "the law of the place in which the service is

---

[59] *Id.*

[60] *Maldonado*, 2010 WL 663723, at *4; *see also* Yvonne A. Tamayo, *Catch Me if You Can: Serving United States Process on an Elusive Defendant Abroad*, 17 HARV. J.L. & TECH. 211, 218 (2003) ("Rule 4(i)(1) [succeeded by Rule 4(f)] furnished five alternative methods for serving process abroad. The fifth method, "as directed by order of the court," was a residual method adopted for the specific purpose of increasing flexibility to courts in ordering service adaptive to the particular circumstances of each case.").

[61] 10 *Del. C.* § 3104(d)(4).

made."[62]  To evaluate whether that service of process was effective, the court applies the law of the foreign jurisdiction as if it was sitting in that jurisdiction.[63] Alternatively, unlike Section 3104(d)(2), and similar to Federal Rule 4(f)(3), Section 3104(d)(4) does not require the court to play the role of a foreign court in a foreign jurisdiction when deciding whether service has been properly effected. Rather, the court considers the context in which it is being asked to authorize alternative means of service, including the laws of the implicated foreign jurisdiction(s) and any past attempts to serve in accordance with recognized means, and then issues an order directing a means of service that it determines is reasonably calculated to provide actual notice that is both binding on the parties and, in the spirit of comity, expected to be honored by the courts of the foreign jurisdiction(s).[64]

---

[62] *Id.* § 3104(d)(2).

[63]  *See id.*; *see also Fox v. Ginsburg*, 785 A.2d 660, 662 (D.C. 2001) (interpreting a statutory provision identical to Section 3104(d)(2) to require the court's receipt of "adequate proof that [plaintiff] obtained an order from a court in the [foreign jurisdiction]—as required by the law of th[at] [foreign jurisdiction]—authorizing service by publication.").  I note the parties dispute whether the inquiry mandated by Section 3104(d)(2) is focused on how the foreign law would require service to be effected in a case pending in that foreign jurisdiction, or how the foreign law would require service to be effected in a case pending in another foreign jurisdiction. *Compare* Pls.' Supplemental Answering Br. at 10 (arguing Section 3104(d)(2) requires the court to analyze how Singapore law would direct that service be effected in a foreign court) *with* Defs.' Supplemental Reply Br. at 8 (arguing Section 3104(d)(2) requires the court to analyze how Singapore law requires that service be effected in Singapore).  Because I am not deciding this motion on the basis of Section 3104(d)(2), I need not decide this issue.

[64] *See* 10 *Del. C.* § 3104(d)(4); *see also, e.g.*, *Rio Props.*, 284 F.3d at 1014 (construing a similarly worded statute to allow, by "its plain language," court-directed service provided

The only potentially substantive textual difference between Federal Rule 4(f)(3) and Section 3104(d)(4) is the former's requirement that the means of service designated by the trial court "not [be] prohibited by international agreement."[65] Though the Ninth Circuit in *Rio Properties* interpreted this language to allow for service of process "as long as court-directed and not prohibited by an international agreement . . . [even if that service is] accomplished in contravention of the laws of the foreign country,"[66] Defendants point out that courts do not uniformly embrace that construction of Federal Rule 4(f)(3).[67] And, they observe,

it is not prohibited by international agreement); *Romeo v. Looks*, 535 A.2d 1101 (Pa. Super. 1987) *appeal denied*, 542 A.2d 1370 (Pa. 1988) (finding court-ordered substituted service valid under Pennsylvania's identical statutory provision after a "good faith effort to locate the defendant through more direct means" was first tried); *C & F Sys., LLC v. Limpimax, S.A.*, 2010 WL 65200, at *2 (W.D. Mich. Jan. 6, 2010) ("[E]ven if other methods of obtaining service of process are technically allowed, principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant."); *see also* David P. Stewart & Anna Conley, *E-Mail Service on Foreign Defendants: Time for an International Approach?*, 38 GEO. J. INT'L L. 755, 767 (2007) (arguing that "concerns of international comity and judicial interdependence suggest that foreign law considerations are a necessary requirement of judges when authorizing e-mail service on defendants in foreign jurisdictions [under Federal Rule 4(f)(3)]."). Contrary to Defendants' contention, this interpretation of Section 3104(d)(4) does not "negate[]" Section 3104(d)(2). Oral Arg. Tr. 15:11–18. It simply recognizes that Section 3104(d)(4) provides for a means of service in addition to the means codified in Section 3104(d)(2).

[65] *Compare* Fed. R. Civ. P. 4(f)(3), *with* 10 *Del. C.* § 3104(d)(4).

[66] *Id.* at 1014.

[67] *See In re The Richmond Gp., Inc.*, 2017 WL 4221099, at *3 (W.D.N.Y. Sept. 21, 2017) ("A court should take great care in deciding whether to exercise its discretion to permit service under Rule 4(f)(3), to avoid violating the sovereignty of a foreign country."); *C & F Sys.*, 2010 WL 65200, at *2 ("[E]ven if other methods of obtaining service of

several courts have recognized, at a minimum, that the plaintiff must first "show[]

the circumstances are such that the court's intervention is necessary."[68]

Even assuming (without deciding) Defendants' more restrictive reading of

Section 3104(d)(4) is correct, Plaintiffs' service in this case, as designated by court

order, would still be proper. For a court's intervention to be "necessary," a party

need not exhaust all possible methods of service; rather, the court may authorize an

alternative form of service where traditional means have failed or are practically

unavailable.[69]

---

process are technically allowed, principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant.").

[68] *Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 385 Supp. 3d 212, 220 (S.D.N.Y. 2019).

[69] *See Zhou v. Deng*, C.A. No. 2021-0026-JRS, at 9 (Del. Ch. April 14, 2021 (TRANSCRIPT) (granting a motion for alternative service in an expedited action where service via traditional means proved impractical); *In re Heckmann Corp. Sec. Litig.*, 2011 WL 5855333 (D. Del. Nov. 22, 2011) ("[I]t is not necessary that a plaintiff first attempt every permissible type of service prior to seeking relief from the court under rule 4(f)(3)."); *Rio Props.*, 284 F.3d at 1016 ("[Plaintiff] need not have attempted every permissible means of service of process before petitioning the court for alternative relief. Instead, RIO needed only to demonstrate that the facts and circumstances of the present case necessitated the district court's intervention."); *Oh v. Chan*, 2008 WL 11338884, at *2 (C.D. Cal. Sept. 16, 2008) ("In exercising its discretion, the district court may require a showing by the plaintiff that reasonable efforts to serve the defendant have already been made and that the court's intervention will avoid further unduly burdensome or futile attempts at service. Courts have certainly authorized alternative service when plaintiffs have gone to great—and unsuccessful—lengths to effect service through traditional means or where the defendant proved to be particularly evasive." (internal quotations and citations omitted)); *CKR Law LLP v. Anderson Invs. Int'l, LLC*, 2021 WL 935843 (S.D.N.Y. Mar. 12, 2021) ("When courts have allowed for alternative service, they have done so when plaintiffs have been unable, despite diligent efforts, to serve the defendant in the [foreign

Here, Plaintiffs attempted unsuccessfully to serve both Noronha and Riady several times at their homes, consistent with Singapore law.[70]  After persisting for some time, and without having any means of discerning Noronha or Riady's current location, or any indication when either would return to their residences, Plaintiffs moved in this Court for alternative service.  With these facts in mind, I am satisfied the facts and circumstances of this case justify the Court's intervention under Section 3104(d)(4).  I am also satisfied, for reasons explained below, that the means of service designated by the Court is reasonable and fair.

As noted, one legitimate reason the court might be reticent to sanction the means of service requested by a plaintiff under Section 3104(d)(4) is if the selected means would be ineffective in the jurisdiction where the targets of such service reside.[71]  Here, however, Singapore law indisputably recognizes in cases where personal service is "impracticable" that valid service of an action in a Singapore

---

country] according to the Hague [] Convention procedures.  These requirements are imposed in order to prevent parties from whimsically seeking an alternate means of service." (internal quotations and citations omitted)).

[70] D.I. 55 ¶¶ 3, 5 (describing several unsuccessful attempts to serve Riady at two separate addresses over the course of several weeks, consistent with Singaporean law); D.I. 65 ¶¶ 3, 7 (describing several unsuccessful attempts to serve Noronha at his residence, consistent with Singaporean law).

[71] *See C & F Sys.*, 2010 WL 65200, at *2 ("[E]ven if other methods of obtaining service of process are technically allowed, principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant.").

court may be made, *inter alia*, "as the Court may direct to bring the document to the notice of the person to be served,"[72] which may "include the use of such electronic means (including electronic mail or Internet transmission) as the Court may specify."[73] It is also uncontested that where, as here, "service of any process [is] required in connection with civil proceedings pending before a court or other tribunal of a foreign country," service within Singapore may, under its law, "be effected by a method of service authorized by these Rules for the service of analogous process issued by the Court."[74] In other words, Singapore allows foreign process to be served within its border by any method "analogous" to its own rules, including court-ordered email service.[75] Plaintiffs' service via email was therefore effective on Riady and Noronha under Singapore law.

Moreover, neither Noronha nor Riady dispute that the Substituted Means were reasonably calculated to give them actual notice or that both defendants, in fact, have

---

[72] Pls.' Supplemental Answering Br., Ex. 1 (Lahiri Aff., May 20, 2020) ("Lahiri Aff.") at Ex. SL-2 (Order 62, r.5(3)); *see also* Hing Opening Aff. ¶ 9 (asserting the originating process must either be served by personal service or in accordance with the agreement of the parties or otherwise ordered by the Court). I note again that Singapore is not a signatory to the applicable Hague Convention so that treaty is nor relevant to any inquiry into the state of Singapore's law on service of process.

[73] Lahiri Aff., at Ex. SL-2 (Order 62, r.5(4)).

[74] Lahiri Aff. at Ex. SL-2 (Order 65 r.2A); Hing Reply Aff. ¶ 7.

[75] Lahiri Aff. ¶ 12; *id.* at Ex. SL-2 (Order 62, r.5(4)).

actual notice of this suit. Noronha and Riady both tacitly admit, therefore, that the Substituted Means were fair and consistent with Due Process under our law.[76]

## III.   CONCLUSION

For the foregoing reasons, Defendants Noronha and Riady's motion to dismiss Plaintiffs' Complaint for insufficient service of process and lack of personal jurisdiction is DENIED.

**IT IS SO ORDERED.**

---

[76] *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (setting out the constitutional standard to be "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *In re Heckmann Corp.*, 2011 WL 5855333, at *5 (explaining that where "service via email is reasonably calculated to reach [a defendant], it is not inconsistent with due process, and is an acceptable means of service." (internal quotations and citations omitted)); *Zhou v. Deng*, C.A. No. 2021-0026-JRS, at 10 (TRANSCRIPT) (finding international service via email reasonably calculated to give actual notice to the relevant third parties).